UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CRAIG FRAZIER DESIGN, INC., a California corporation, dba CRAIG FRAZIER STUDIO,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>THE ZIMMERMAN AGENCY, LLC, a Delaware company, AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS a.k.a. AFLAC, a Nebraska corporation, and<br><br>　　　　　Defendants. | Case No:  C 10-1094 SBA<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Docket 23 |

Plaintiff Craig Frazier Design, Inc., dba Craig Frazier Studio ("Plaintiff" or "Frazier") filed the instant copyright infringement action against Defendants American Family Life Assurance Company of Columbus ("AFLAC") and The Zimmerman Agency LLC ("Zimmerman"). The parties are presently before the Court on Defendants' motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion for the reasons set forth below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

**I.   BACKGROUND**

In or about August 2009, Zimmerman, an advertising firm, made a presentation to AFLAC executives for the company's proposed "You Don't Know Quack" advertising campaign ("Ad Campaign").  Compl. ¶ 14, Dkt. 1.  Zimmerman showed AFLAC a series of preliminary mock-ups (also referred to as "comps") prepared by Zimmerman employee

1  Erich Stefanovich ("Stefanovich"), which featured representations of the AFLAC's
2  signature duck, shown in various flat colors.  Id.  AFLAC liked the concept, but wanted to
3  see further development of an illustrated, more "iconic," style for the proposed duck to be
4  used in the Ad Campaign.  Id.  As a result, on September 3, 2009, Zimmerman contacted
5  Frazier by email to inquire whether he would be interested in creating "exploratory"
6  illustrations of ducks for the Campaign.  Id. ¶ 15.  Zimmerman wanted Frazier to bring "his
7  style and bring it to life and perhaps come up with a few ideas to add to it."  Id.  In
8  particular, Zimmerman asked Frazier to create exploratory illustrations showing his
9  proposed stylistic direction "for the new illustrated duck icon," which were to be presented
10 to AFLAC.  Id.  Attached to the email were PDF files containing duck images used in
11 Stefanovich's comps, which show four images of a duck presented in two colors (white and
12 orange) against a blue and black background.  Id. Ex. 1.

**Zimmerman's Comps**





20 Zimmerman and Plaintiff reached a written agreement for Frazier to prepare the exploratory
21 illustrations.  Id. ¶ 17 and Ex. 2. Thereafter, Zimmerman provided Plaintiff with the above-
22 shown comps (with the images embedded in print ads, billboard, etc.) along with reference
23 files showing AFLAC's previous renditions of its duck.  Id. ¶ 18 and Ex. 3.

**AFLAC Reference Files**



Frazier worked on his exploratory illustrations over the weekend, and on Monday, September 7, 2009, he sent digital files of his work to Zimmerman. Id. ¶ 19 and Ex. 4. Frazier sent additional files on September 8, 2009. Id. ¶ 20 and Ex. 5. Frazier's illustrations showed a number of variations to exemplify the "Shadowed Direction" concept. Id. ¶ 19.

**Samples of Frazier's Comps (9/7/09 & 9/8/09)**



Frazier created a more stylized version of the Zimmerman comps and utilized shading to create a more dimensional presentation. Id. Zimmerman paid Plaintiff a total of $4,000 in two equal installments on October 9 and October 13, 2009. Id. ¶ 21. Stefanovich told Frazier he was pleased with his work, and that he would present the illustrations to AFLAC. Stefanovich further stated that if Zimmerman were successful in landing the account, Frazier would be the illustrator for the Ad Campaign. Id. ¶ 22.

On or about September 14, 2009, Zimmerman made a presentation to AFLAC featuring Frazier's works. Id. ¶ 23. After several requests by Frazier, Zimmerman eventually provided him with copies of the "presentation comps," i.e., the illustrations that were shown to AFLAC. Id. A few days later, Frazier and Stefanovich spoke with each other about the September 14 presentation. Id. Stefanovich told Frazier that they were "almost there," and that he wanted to know if Frazier could make the duck appear "more iconic." Id. Stefanovich indicated that he knew that the additional refinements were

1 outside the scope of their agreement, but Frazier agreed to prepare more simplified
2 illustrations, believing that it would help Zimmerman obtain the contract, which, in turn,
3 would mean that he would prepare the final illustrations.  Id. ¶ 25.  Frazier provided the
4 "Modified (simplified illustrations)" to Stefanovich on October 6, 2009, and on October 8,
5 2009.  Id. ¶ 26 and Ex. 7.

**Samples of Modified Frazier's Comps (10/6/09 & 10/8/09)**



13 In all, Frazier created twenty-four presentation illustrations for Zimmerman in connection
14 with its efforts to obtain the contract to prepare the Campaign for AFLAC.  Id. ¶ 27 and
15 Ex. 7.
16      On October 15, 2009, Zimmerman asked Plaintiff to quote a price for creating the
17 final illustrations for the Ad Campaign.  Id. ¶ 28.  Plaintiff responded with an estimate of
18 $250,000 for creating ten final illustrations for a two-year period of unlimited usage, with
19 $100,000 for each additional year of usage.  Id.  Zimmerman countered that AFLAC's
20 budget was only $100,000.  Id.  Plaintiff then proposed a fee of $125,000 for ten
21 illustrations with one-year of unlimited usage.  Id.  Zimmerman responded with a proposal
22 of $100,000 for ten illustrations with unlimited usage for one year, excluding television.  Id.
23 Plaintiff accepted Zimmerman's final counterproposal on October 15, 2009.  Id.  Two days
24 later, on October 21, 2009, however, Zimmerman informed Plaintiff by email that, "The
25 client decided to go in a different direction from Craig's with the illustrations."  Id.
26      On January 6, 2010, AFLAC launched its "You Don't Know Quack" Campaign with
27 large print advertisements in the New York Times, The Wall Street Journal and USA

Today, utilizing illustrations that are alleged to "closely mimic" the illustrations prepared by Frazier.  Id. ¶ 30 and Ex. 8.

**Samples of AFLAC's Ads**



Upon seeing these advertisements, Plaintiff, through legal counsel, contacted Zimmerman and accused it of copyright infringement.  Id. ¶ 31.  Zimmerman responded by filing a declaratory judgment action in the Northern District of Florida.  Id.  Zimmerman later dismissed that action on May 3, 2010.  Dkt. 11.

On March 14, 2010, Plaintiff filed the instant action against AFLAC and Zimmerman.  The Complaint alleges four claims for relief, styled as follows:  (1) Federal Copyright Infringement Under 17 U.S.C. § 101 et seq.; (2) Breach of Contract Under California Law; (3) Fraud and Deceit; and (4) Unfair Business Practices Under Cal. Bus. & Prof. Code § 17200 et seq.  AFLAC, joined by Zimmerman, has filed a motion to dismiss Plaintiff's copyright infringement and § 17200 claim.  The crux of AFLAC's motion is two-fold.  First, AFLAC argues that Frazier's illustrations are "derivative works" that are not entitled to protection under the Copyright Act, as a matter of law.  Second, AFLAC contends that even if Plaintiff's works are copyrightable, AFLAC advertisements "took nothing" protectable from such illustrations.  The motion has been fully briefed and is ripe for adjudication.

## II.   LEGAL STANDARD

A Rule 12(b)(6) dismissal for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a cognizable legal claim.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  The

plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). Those facts must be sufficient to push the claims "across the line from conceivable to plausible[.]" Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1951 (2009) (quoting Twombly, 550 U.S. at 557). In deciding a Rule 12(b)(6) motion, the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice[.]" Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold and Easement in the Cloverly Subterranean, Geological Formation, 524 F.3d 1090, 1096 (9th Cir. 2008). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). If the complaint is dismissed, plaintiff generally should be afforded leave to amend unless it is clear the complaint cannot be saved by amendment. See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

## III. DISCUSSION

### A. DERIVATIVE WORKS

"[T]o establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991); Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d 1108, 1113 (9th Cir. 2010). The Copyright Act expressly extends copyright protection to "pictorial" and "graphic" works. 17 U.S.C. § 102(a)(5). The sine qua non of a copyright is *originality*; that is, "that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." Feist, 499 U.S. at 345. Under Feist, "the requisite degree of creativity as "extremely low; even a slight amount will suffice." Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1076 (9th Cir. 2000). Elements of originality in a photograph or graphic work include "lighting, shading, angle, background, and so forth," the decisions about which "have been recognized as sufficient to convey

1  copyright protection . . . ." Id. Under this "minimal threshold" standard for protection,
2  "[t]he vast majority of works make the grade quite easily, as they possess some creative
3  spark, no matter how crude, humble or obvious it might be." Id. (internal quotations and
4  citation omitted).
5      As a threshold matter, Defendants contend that Frazier's illustrations are not entitled
6  to copyright protection, ostensibly because they are "derivative" works which are not
7  sufficiently distinct from the preexisting Zimmerman comps and AFLAC reference files to
8  be copyrightable. Def.'s Mot. 5-10, Dkt. 23. When a copyrighted work is "based upon one
9  or more preexisting works," it is known as a "derivative work." 17 U.S.C. § 101.
10 Although a derivative work is protected by the Copyright Act, "the copyright protection
11 afforded . . . is more limited than it is for original works of authorship." Entm't Research
12 Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1218-219 (9th Cir. 1997).
13 Specifically, "[t]he copyright in a . . . derivative work extends *only to the material*
14 *contributed by the author of such work*, as distinguished from the preexisting material
15 employed in the work, and does not imply any exclusive right in the preexisting material."
16 17 U.S.C. § 103(b) (emphasis added). Thus, a derivative work must contain original
17 elements that make the derivative work distinct from its original work. FragranceNet.com,
18 Inc. v. FragranceX.com, Inc., 679 F. Supp. 2d 312, 323 (E.D.N.Y. 2010). Alterations to a
19 preexisting work are themselves protected by copyright to the extent that they "possess at
20 least some minimal degree of creativity." Feist, 499 U.S. at 345.
21     Defendants assert that a visual comparison between Zimmerman's comps and
22 AFLAC's reference files and the illustrations subsequently prepared by Frazier is sufficient
23 to establish that the Frazier's works "are derivative works as a matter of law." Def.'s Mot.
24 at 5, Dkt. 39. The Court disagrees. To constitute a "derivative work," such work must be
25 "*based upon* one or more preexisting works." 17 U.S.C. § 101 (emphasis added). "Based
26 upon" in this context means that the latter work was "substantially copied" from the earlier
27 work. See Litchfield v. Speilberg, 736 F.2d 1352, 1357 (9th Cir. 1984). Here, the
28 determination of what, in fact, constitutes a preexisting work and whether Plaintiff

substantially copied such work cannot be made at this juncture.[1]  The Complaint, the factual allegations of which are taken as true, only alleges that Zimmerman sent Frazier the comps prepared by Stefanovich and AFLAC's reference files so he could "get an idea of what" of what AFLAC was "looking for," so that "[he] could interpret these ideas and make them art . . . [and] give it his style and bring it to life[.]"  Compl. ¶ 18 and Ex. 1.  Since all inferences are to be drawn in favor of the plaintiff on a motion to dismiss, it would be inappropriate for the Court to conclude, based on the limited record presented, and as a matter of law, that Defendants' images constitute preexisting works or that Plaintiff substantially copied them.

        The above notwithstanding, the Court disagrees with Defendants' contention that Frazier's illustrations are insufficiently distinct from Zimmerman's comps and AFLAC's references files to preclude copyright protection.  Def.'s Mot. at 8-10.  The shapes of the duck head in Frazier's illustrations differ from those presented in the Zimmerman comps.  Likewise, whereas the duck bills shown on Zimmerman's comps are a single shade of orange, Frazier's drawings utilize shading to connote the different contours of the bill.[2]  E.g., compare Compl. Ex. 1 with id. Exs. 5 and 7.  The distinction is even more pronounced with respect to AFLAC's reference files.  Indeed, Frazier's designs share little in common with AFLAC's reference files, aside from the fact that both depict a white duck with an orange bill.  Ultimately, under the circumstances of this case, the Court finds that the

---

[1] Defendants request that the Court take judicial notice certain of AFLAC's prior trademark and copyright registrations for the purpose of establishing that particular images of the "Aflac Duck" (which differ from the AFLAC reference files alleged in the Complaint) constitute "preexisting" images.  Def.'s Mot. at 2-3; Def.'s Req. for Jud. Notice. Exs. E, D, G, Dkt. 26. Under Federal Rule of Evidence 201, a court may take judicial notice of the existence of matters of public record, but not the truth of the facts cited therein.  See Lee v. City of Los Angeles, 250 F.3d 668, 689-690 (9th Cir. 2001).  As a result, while the Court may take judicial notice that a duck image was depicted in those registrations, it may not rely on such exhibits to establish that the particular image of the duck utilized constitutes a preexisting work for purposes of analyzing whether Frazier's images are "derivative."

[2] AFLAC's contention that there is no appreciable difference between Zimmerman's comps and Frazier's illustrations is further undermined by the fact that AFLAC allegedly rejected Zimmerman's comps, thereby prompting Zimmerman to solicit Frazier's involvement "to give it his style . . . ."  Compl. Ex. 1.

1   determination of the originality of a derivative work is a factual question that is
2   inappropriate for resolution on a motion to dismiss.  See Woods v. Bourne Co., 60 F.3d
3   978, 991 (2d Cir. 1995) ("To determine whether a work is sufficiently original to be a
4   derivative work, the judge in a bench trial must make findings of fact based upon a
5   comparison of two works"); FragranceNet.com, Inc., 679 F. Supp. 2d at 323 ("The
6   determination of the originality of a derivative work is a factual question that is
7   inappropriate for determination on a motion to dismiss").

   **B.    COPYING OF PROTECTED ELEMENTS**

   Alternatively, Defendants argue that Plaintiff cannot meet the second prong of the test for copyright infringement; i.e., that Defendants copied protectable components of Plaintiff's work.  Def.'s Mot. at 10-18.  "Copying may be shown by circumstantial evidence of access and substantial similarity of both the general ideas and expression between the copyrighted work and the allegedly infringing work."  See Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442 (9th Cir. 1994).  To determine whether works are substantially similar, the Ninth Circuit counsels the use of both an extrinsic and an intrinsic test.  Id.  The extrinsic test objectively considers whether there are substantial similarity in both ideas and expression.  Id.  In applying the extrinsic test, to salient inquiry is whether the protectable elements of the respective works are substantially similar.  See Benay v. Warner Bros. Entm't, Inc., 607 F.3d 620, 624 (9th Cir. 2010).  In contrast, intrinsic test measures expression subjectively from the standpoint of the ordinary reasonable observer.  Apple Computer, 35 F.3d at 1442.  "The 'extrinsic test' is an objective comparison of specific expressive elements . . . .  The 'intrinsic test' is a subjective comparison . . . ."  Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002).

   Defendants contend there are only a limited number of ways of representing a duck, and therefore, Frazier's works are only entitled to "thin" copyright protection.   Def.'s Mot. at 12.  As a general rule, the amount of copyright protection depends on whether "the breadth of the possible expression of those ideas."   Mattel, Inc. v. MGA Entm't, Inc., ---

1  F.3d ---, 2010 WL 2853767, at *7 (9th Cir. July 22, 2010).  Thus, "[i]f there's a wide range
2  of expression (for example, there are gazillions of ways to make an aliens-attack movie),
3  then copyright protection is 'broad' and a work will infringe if it's 'substantially similar' to
4  the copyrighted work."  Id.  In contrast, "[i]f there's only a narrow range of expression (for
5  example, there are only so many ways to paint a red bouncy ball on blank canvas), then
6  copyright protection is 'thin' and a work must be 'virtually identical' to infringe."  Id.

7  Citing Satava v. Lowry, 323 F.3d 805 (9th Cir. 2003), AFLAC contends that a
8  graphical representation of a duck is dictated by its natural appearance, and that there are no
9  protectable elements in Frazier's illustrations.  In Satava, the Ninth Circuit held that an
10 artist who created a glass sculpture of a jellyfish in a jar could "not prevent others from
11 copying aspects of his sculptures resulting from either jellyfish physiology or from their
12 depiction in a glass-in-glass medium."  Id. at 810.  At the same time, however, the court
13 recognized that "[t]o the extent that . . . artistic choices . . . not governed by jellyfish
14 physiology . . . , they are original elements that [plaintiff] theoretically may protect through
15 copyright law."  Id. at 812.  Thus, an artist "may . . . protect the original expression he or
16 she contributes," such as variations in "the pose, attitude, gesture, muscle structure, facial
17 expression, coat, or texture of [the] animal."  Id.  In addition, an artist may claim copyright
18 protection based on the "background, lighting, or perspective" of the image.  Id.

19 Despite Defendants' suggestions to the contrary, it is readily apparent that Plaintiff
20 is not claiming copyright protection based simply on his graphical presentation of a white
21 duck set against a black and blue background.  Rather, as alleged in the pleadings and as
22 shown in the exemplars attached to the Complaint, Frazier prepared stylized duck images
23 shown in a variety of poses and perspectives.  Of particular note is Frazier's specific use
24 and style of shading on the duck bill.  While there are certainly elements of Plaintiff's
25 design that flow from a duck's physiology (that are not protectable under Satava), it is
26 equally clear that Frazier added his own artistic flair that may entitle him to copyright
27
28

- 10 -

protection.³  Whether or not Plaintiff is limited only "thin" copyright protection need not be resolved at this juncture, since the salient question is whether Plaintiff has alleged sufficient facts to state a claim under the Copyright Act, which it has done.  See Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001) (noting that the purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to decide its merits).

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss is DENIED.

2. Defendants shall file their responsive pleading to the Complaint within fourteen days of the date this Order is filed.

3. The parties shall appear for a telephonic Case Management Conference on **October 28, 2010, at 3:00 p.m.**  The parties shall meet and confer prior to the conference and prepare a joint Case Management Conference Statement, which shall be filed no later than five (5) days prior to the Case Management Conference.  The statement shall comply with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court.  Plaintiff shall be responsible for filing the statement as well as for arranging the conference call.  All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

4. This Order terminates Docket 23.

IT IS SO ORDERED.

Dated: September 24, 2010

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

---

³ Indeed, the fact that Zimmerman had agreed to pay Plaintiff the sum of $100,000 for his work certainly supports the inference that Frazier did more than simply copy the real life image of a duck.